# EXHIBIT 1

Filing # 188528918 E-Filed 12/21/2023 02:56:14 PM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO:

S.W., A MINOR, BY CHELSEA WINDHAM
AND VINCENT C. WINDHAM,

Individually as natural guardians and
next friends,

       Plaintiff(s),

vs.

WANABANA LLC and WANABANA
USA LLC, and DOLLAR TREE STORES,
INC.
       Defendant(s).

_____/

## COMPLAINT

Plaintiffs S.W., a minor, by Chelsea Windham and Vincent C. Windham, individually and as natural guardians and next friends (hereinafter, "Plaintiffs"), file this complaint against Defendants (hereinafter, "Defendants") or for damages for personal injuries sustained as a result of S.W.'s ingestion of lead in Defendants' WanaBana Apple Cinnamon Fruit Puree (hereinafter, the "Products"), and sold by Dollar Tree Stores, Inc. Plaintiffs complain and allege as follows upon personal knowledge as to Plaintiffs and their own acts and experiences and, as to all other matters, upon information and belief:

### NATURE OF THE ACTION

1.     Plaintiff Chelsea Windham is the natural mother of S.W., a minor.

2.     Plaintiff Vincent C. Windham is the natural father of S.W., a minor.

3.      Plaintiff Minor child S.W. consumed Defendants' Products and suffered life-long catastrophic injuries including lead poisoning as a result of her consumption of Defendants' Products, which were contaminated with lead.

4.      Defendants Wanabana LLC and Wanabana USA LLC both design, manufacture, distribute, test, package, label, promote, market, advertise, distribute, and sell fruit puree "pouches," including the Products at issue in this litigation, throughout the United States.

## THE PARTIES

### *Plaintiffs*

5.      Plaintiffs Chelsea Windham and Vincent C. Windham are a married couple who, along with their minor child S.W., are citizens and residents of Jasper, Florida.

6.      Minor Child S.W. in Florida consumed Defendants' products from approximately July 2023, when S.W. was approximately 15 months old, during her developmental stages. During this time period Minor Child S.W. consumed several of Defendants' Products.

7.      As a result of consuming Defendants' Products, Minor Child S.W. has suffered life-long catastrophic injuries, including lead poisoning.

### *Defendants*

8.      Defendants Wanabana LLC., and Wanabana USA LLC both specialize in the production, marketing, distribution, and sale of a variety of pureed fruit products, which they distribute throughout Florida and the United States via facilities in Florida. Dollar Tree Stores, Inc., is a retail store that sells general merchandise throughout the United States and Florida, including stores in Miami-Dade.

9.      Defendant Wanabana LLC is a Florida limited liability corporation with its principal place of business at 9405 N. Miami Ave. Miami Shores, FL33150. Defendant designs,

manufactures, tests, packages, labels, promotes, markets, advertises, distributes, and sells the Products at issue in this litigation throughout the United States, including in Miami-Dade County. Defendant registered as a Florida Limited Liability Company on January 11, 2018.

10.     Defendant Wanabana USA LLC is a Florida limited liability corporation with its principal place of business at 1413 Ponce De Leon Ave. Ste. 301 San Juan, Puerto Rico 00907. Defendant Wanabana USA LLC registered as a Florida Limited Liability Company on October 25, 2023. Defendant designs, manufactures, tests, packages, labels, promotes, markets, advertises, distributes, and sells the Products at issue in this litigation throughout the United States, including in Miami-Dade County.

11.     Defendant Dollar Tree Stores, Inc. is a Virginia limited liability corporation with its principal place of business at 500 Volvo Parkway, Chesapeake, Virginia 23320. Defendant sells the Products at issue in this litigation across the United States, including throughout Florida and Miami-Dade County.

12.     The Products at issue are imported from Ecuador into the US by Defendants Wanabana LLC and Wanabana USA LLC through the Miami Seaport to facilities located at 2113 W. 30 St. Jacksonville, Florida 32209, where they are then distributed throughout the United States and Florida.

13.     During all relevant times, Defendants Wanabana LLC and Wanabana USA LLC controlled the sourcing of ingredients, testing, manufacturing process, quality assurance protocols, design, packaging, labeling, marketing, advertising, promotion, distribution, and sales of their Products. Defendants Wanabana LLC and Wanabana USA LLC therefore had control over both the contents, packaging, and the labeling of their Products.

14.     Defendants Wanabana LLC., and Wanabana USA LLC have both been involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products under the WanaBana name throughout the United States, including in Miami-Dade County. Defendants have done so continuously throughout the relevant time period.

15.     Defendant Dollar Tree Stores, Inc. has sold the Products to consumers continuously through the relevant time period.

## JURISDICTION AND VENUE

16.     This is an action for damages in excess of fifty-thousand dollars ($50,000.00) and cannot be removed to the United States District Court under the provisions of 28 U.S.C. § 1441(a)(2) because Plaintiffs and Defendants Wanabana LLC., and Wanabana USA LLC are citizens of the state of Florida where this action is brought.

17.     This Court also has jurisdiction over this action because Defendants Wanabana LLC., and Wanabana USA LLC are both Florida limited liability companies that conduct substantial businesses throughout the state of Florida, including in Miami-Dade County.

18.     Defendants Wanabana LLC., and Wanabana USA LLC import their Products from Ecuador for distribution throughout the United States and the Miami Seaport via a large shipping and warehouse facility in Jacksonville, Florida. Defendants Wanabana LLC., and Wanabana USA LLC then distribute the Products and make them available at numerous retail and online outlets throughout the United States, including Defendant Dollar Tree Stores, Inc.

19.     Defendants regularly and systematically conduct business, including importing, contracting, distributing, and selling its products—including the Products at issue in this litigation—in Miami-Dade County, to consumers in Miami-Dade County, throughout the state of

4

Florida, and throughout the United States. Accordingly, Defendants are subject to the jurisdiction of this Court.

20.     Venue is likewise proper in Miami-Dade County pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in Miami-Dade County and regularly conduct substantial business in Miami-Dade County. Furthermore, many of the acts and transactions giving rise to this action occurred in Miami-Dade County, as Defendant Wanabana LLC's principal place of business is located in this District.

## FACTUAL ALLEGATIONS

*Plaintiffs' Facts*

21.     Minor Child S.W. began consuming pouches of Wanabana Apple Cinnamon Fruit Puree in or around July 2023, when S.W. was approximately 15 months old.

22.     Plaintiffs Chelsea and Vincent C. Windham both work; they were fortunate enough that Minor Child S.W.'s paternal grandmother had the desire and the ability to care for Minor Child S.W. during work hours.

23.     Plaintiff Minor Child S.W.'s paternal grandmother cares for Minor Child S.W. for a length of time that requires her to provide meals and snacks to Minor Child S.W.

24.     Plaintiff Minor Child S.W.'s paternal grandmother, being authorized to care for Minor Child S.W. by her son and his wife, tries hard to feed Minor Child S.W. food that is healthy and nutritious while Minor Child S.W. is in her care. As part of those efforts, Minor Child S.W.'s paternal grandmother purchased Defendants Products from Dollar Tree stores starting in July 2023.

25.     Minor Child S.W. consumed "pouches" of Defendants' Products until approximately October 2023.

26.     As part of a regular childhood lead screening by North Florida Pediatrics. Minor Child S.W.'s blood tested positive for elevated lead levels in September 2023.

27.     Subsequent testing revealed increasingly elevated lead levels in S.W.'s blood.

28.     Plaintiffs Chelsea and Vincent C. Windham immediately underwent lead testing and requested lead testing for all family members in frequent contact with Minor Child S.W., including Minor Child S.W.'s maternal grandmother and grandfather, and Minor Child S.W.'s paternal grandmother great grandmother. Everyone other than Minor Child S.W. tested well within normal limits on their lead testing.

29.     The Florida Health Department Environmental Health Team conducted extensive testing into Plaintiffs' home and, to date, has found no environmental source of lead contamination that could be the source of Minor S.W.'s injuries.

30.     On or about October 30, 2023, Plaintiffs became aware of the FDA's public health alert that the Products contained "extremely high" levels of lead (the "FDA Alert").[1]

31.     After reviewing this warning, Plaintiffs grew concerned that Defendants' Products were the source of their Minor Child's lead exposure—Plaintiffs had provided dozens of fruit puree pouches of Defendants' Products to S.W. as a direct result of Defendants' marketing efforts and omissions.

32.     After learning of the recall, Plaintiff Vincent. C. Windham purchased a recalled package of three packs of Defendants' Products from Defendant, Dollar Tree Stores, Inc.

33.     Based on the false and misleading claims by Defendants, Plaintiffs were unaware that Defendants' Products were adulterated with lead. Plaintiffs fed Defendants' Products to their

---

[1] FDA, FDA Advises Parents and Caregivers Not to Buy or Feed WanaBana Apple Cinnamon Fruit Puree Pouches to Toddlers and Young Children Because of Elevated Lead Levels, https://www.fda.gov/food/alerts-advisories-safety-information/fda-advises-parents-and- caregivers-not-buy-or-feed-wanabana-apple-cinnamon-fruit-puree-pouches, Oct. 30, 2023 (last visited Dec. 20, 2023) ("FDA Alert").

minor child S.W. on the belief that the labeling of Defendants' Products was accurate and that the Products were unadulterated and safe for consumption.

34.     Plaintiffs would not have fed S.W. Defendants' Products had they known that there was a risk that the Products may contain lead.

35.     Plaintiffs believed that they were allowing Plaintiff Minor S.W. to consume a high-quality, safe, and nutritious pureed fruit product from Defendants.

36.     Prior to allowing Plaintiff Minor S.W. to consume the Products, Plaintiffs saw and relied upon nutritional and safety claims on the packaging of the Products.

37.     During the time Plaintiffs provided the Products to S.W., and due to Defendants' misrepresentations and omissions, Plaintiffs were unaware that the Products contained or had a material risk of containing any level of lead and/or other undesirable toxins or contaminants. Plaintiffs would not have allowed their minor child to consume the Products if that information had been fully disclosed.

38.     Plaintiffs relied upon the misrepresentations and omissions from the Products' packaging, which was prepared, reviewed, and/or approved by Defendants and disseminated by Defendants through the United States.

*39.*     ***FDA Alerts Consumers of the Presence of Lead in Defendants' Products***

40.     On October 30, 2023, the FDA issued a public health alert that the Products contained elevated levels of lead.[2]   The FDA Alert was prompted by a North Carolina Department of Health and Human Services investigation (the "NCDHHS Statement")[3] regarding four children in North Carolina that were found to have high levels of lead in their blood linked

---

[2] *Id.*
[3] NCDHHS, NCDHHS Urges Caution After Reportable Lead Found in WanaBana Brand Apple Cinnamon Puree, https://www.ncdhhs.gov/news/press-releases/2023/10/28/ncdhhs-urges-caution-after-reportable-lead-found-wanabana-brand-apple-cinnamon-puree, Oct. 28, 2023 (last visited Dec. 20, 2023) ("NCDHHS Statement").

to the puree products.

41.      According to the FDA Alert, NCDHHS officials analyzed multiple lots of the Products and detected "extremely high" concentrations of lead.[4]

42.      The FDA confirmed the results and said they could lead to "acute toxicity."[5]

43.      "The FDA has reviewed and supports NCDHHS's analytical findings and found that analytical results at this level could result in acute toxicity," and "has shared the results with [Defendants] whose representatives are cooperating with the FDA and have agreed to voluntarily recall all WanaBana apple cinnamon fruit puree pouches regardless of expiration."[6]

44.      The FDA and the NCDHHS, along with the North Carolina Department of Agriculture & Consumer Services, analyzed various samples of the Products and determined that these products are dangerous and contaminated with lead.[7]

45.      The FDA identified and confirmed that there are serious health implications arising from lead exposure and toxicity.[8]

46.      According to the FDA, as of December 13, 2023, recalled WanaBana Apple Cinnamon Puree products were still on the shelves at several Dollar Tree stores in multiple states.[9]

***Dangers of Lead***

47.      Defendants' Products contained lead, an extremely toxic heavy metal, ingestion of which can lead to poisoning and serious, life-long adverse health effects that are well-

---

[4] FDA Alert.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] FDA, Investigation of Elevated Lead Levels: Cinnamon Applesauce Pouches (November 2023), https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-elevated-lead-levels-cinnamon-applesauce-pouches-november-2023 ((last visited Dec. 20, 2023).

documented, particularly in children.[10]

48.     No amount of lead is known to be safe, and its harmful effects cannot be reversed or remediated.[11]

49.     "Young children are particularly vulnerable to lead poisoning because they absorb 4–5 times as much ingested lead as adults from a given source."[12]

50.     Exposure to lead "is particularly harmful to young children" and "can affect multiple body systems."[13] "Once lead enters the body, it is distributed to organs such as the brain, kidneys, liver, and bones. The body stores lead in the teeth and bones, where it accumulates over time."[14]

51.     Ingestion of lead has been demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, and serious injuries to the nervous system, and other organs and body systems.[15]

52.     Lead exposure can seriously harm the brain and nervous system of children and is associated with a range of negative health outcomes including behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.[16]

53.     In addition to being a probable human carcinogen, exposure to lead can result in neuropathy, brain damage, hypertension, decreased renal function, increased blood pressure, and gastrointestinal and cardiovascular effects, and can cause fetal death in pregnant women.[17]

---

[10] WHO, Lead Poisoning. Aug. 11, 2023, https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health. (last visited Dec. 20, 2023).
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] Centers for Disease Control: Agency for Toxic Substances and Disease Registry, Division of Toxicology and Human Health Sciences, ToxFAQs for Lead, Aug. 7, 2020.
[17] *Id.*

54.     The FDA and the World Health Organization ("WHO") have declared lead dangerous to human health.[18]

55.     The FDA's Toxic Elements Working Group has prioritized studying and regulating lead, as exposure to lead is "likely to have the most significant impact on public health."[19]

56.     Given the negative effects of lead on child development and adult health, the presence of these substances in food is material to reasonable consumers, including Plaintiffs, as it relates to their purchasing and consumption decisions.

57.     Defendants' Products included undisclosed levels of lead, due to Defendants' failure to sufficiently monitor for their presence in the ingredients and finished products. Defendants were or should have been aware of this risk.

58.     Concerns over exposure to lead, and the knowledge of such risks associated with exposure, are not a new phenomenon, and Defendants knew or should have known of the risks associated with the presence of lead in foods they sell to consumers.

59.     Defendants knew or should have known that it owed consumers, including Plaintiffs, a duty of care to prevent, or at the very least, minimize the presence of lead in the Products to the extent reasonably possible.

60.     Defendants knew or should have known that it owed consumers, including Plaintiffs, a duty of care to adequately test for lead in the Products and the contributing ingredients.

---

[18] *See, e.g.*, U.S. House of Representatives Committee on Oversight and Reform, *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* at 2, (Feb. 4, 2021); https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02 04%20ECP%20Baby%20Food%20Staff%20Report.pdf. (last accessed Nov. 21, 2023).
[19] FDA, *Environmental Contaminants in Food*, Jan. 24, 2023, https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm. (last accessed Nov. 21, 2023).

61.     Defendants also had a duty to ensure the Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

62.     Defendants knew or should have known that proper and sufficient testing and/or monitoring the Products for lead in both the ingredients and finished products was critical.

63.     Defendants knew, yet failed to disclose, that they were not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for lead.

64.     Defendants knew or should have known they could control the levels of lead in the Products by properly monitoring and testing for lead at ingredient sourcing, manufacturing, and packaging stages, and effecting changes when needed.

65.     In addition, Defendants knew or should have known that a reasonable consumer would consume the Products regularly, leading to repeated exposure to and accumulation of lead.

***Defendants' Misrepresentations and Omissions***

66.     Defendants makes specific representations to consumers that their fruit pouches, including the Products at issue in this litigation, are high- quality, healthy, and safe products for consumers, including Plaintiffs, to choose for their children, including that they are the "ideal snack for the whole family."[20]

67.     The product's selected slogan, "I AM ONLY FRUIT," is used by Defendants to impart the feeling that parents are giving their children a premium, healthy fruit puree pouch.[21]

68.     Defendants used the same slogan "I AM FRUIT" on the "apple cinnamon" flavor Products ingested by S.W. The front packaging of the Products also reads: "No preservatives," "Gluten free," "NO SUGAR ADDED," and "KOSHER."

---

[20] WanaBana, *Homepage*, https://wanabana.com (last accessed Nov. 21, 2023).
[21] *See generally* WanaBana, *Fruit Pouch*, https://wanabana.com/fruit-pouch/ (last accessed Nov. 20, 2023).

11



69.

70.    The back of the Products ingested by Minor Child S.W. lists only three ingredients: "Apple puree, cinnamon powder, acidulant: citric acid." It also makes claim that the Products have "BPA Free Packaging and are "Gluten Free."



71.

72.    Defendants tout on their website the safety and quality of the Products. For example, at the bottom of the WanaBana homepage, Defendants display seven certification seals followed by the statements "We have certifications that guarantee the excellence of our food processes," and "Ensuring a product with worldwide safety and quality."[22]

---

[22] https://wanabana.com (last accessed Dec. 20, 2023*). From left*: the Orthodox Union, certified Kosher; the Business Alliance for Secure Commerce, certified compliant; the National Sanitation Foundation, certified Good Manufacturing Practice; the British Retail Consortium Global Standards, certified compliant; and certified organic by the European Union, the U.S. Dep't of Agriculture, and Quality Certification Services – Ecuador

73.

      

We have certifications that guarantee the excellence of our food processes.
Ensuring a product with worldwide safety and quality

74.     Further, on Defendants' "About Us" website page, they tout their commitment to "quality, safety, sustainable resource management and social responsibility," and further claim to "have a team of highly qualified people, controlled processes and a food safety management system, which allows us to guarantee the safety of our products and a continuous improvement of our processes," stating they "carry a production line with the highest standards in the market, evidenced in the certifications obtained year after year."[23]

75.     Defendants reiterate that their products are safe and high-quality throughout the "About Us" webpage, ending with the representation:

76.     Our products not only maintain the fruit's organoleptic and nutritional characteristics, but also carry *a production line with the highest standards in the market*, evidenced in the certifications obtained year after year.[24]

77.     Similar statements appear in marketing materials and labeling in stores throughout which the Products are distributed.

---

[23] https://wanabana.com/about-us (last accessed Nov. 21, 2023)
[24] *Id.* (emphasis added).

14

78.     Defendants have yet to post a single alert or warning to customers about the recall of its Products on their official Facebook or Instagram pages.

79.     Instead, Defendants continue to tout alleged health benefits of their products via their website and social media platforms.

80.     Defendants make the following claims about their products on their Facebook page bio:[25]

a.      I AM ONLY FRUIT – Made of only 100 percent natural fruit. We are dedicated to the production, and processing of fresh fruit to guarantee a healthy option for the whole family.

b.      NATURAL - No added sugar, no preservatives, no additives, and comes in a BPA-free package giving you and your loved ones a high-quality addition to your diet.

c.      EXTRAORDINARY STANDARDS – Recognized both at the national and international level, while also striving for innovation and contributing to the development of agriculture and agroindustry.

81.     Defendants make the following claims about their products on their Instagram page bio:[26]

a.      Purees, pulps & smoothies 100% Fruit

b.      No sugar added

c.      Practical package, easy to carry and enjoy

d.      Quality certification

82.     Defendants go so far as to claim that their products prevent illness, stating on its Instagram page, "Each thing that you consume causes or prevents an illness [sic], #Wanabana is 100% fruit, with all the benefits of its natural vitamins and nutrients. And how do you eat?"[27]

---

[25] https://www.facebook.com/wanabanausa/about_privacy_and_legal_info (last accessed Nov. 19, 2023).
[26] https://www.instagram.com/wanabanausa/?hl=en (last accessed Nov. 21, 2023).
[27] https://www.instagram.com/p/CL_huSlnId7/ (last accessed Nov. 19, 2023).

15

Such statements are demonstrably false, as Plaintiff Minor Child S.W. and other consumers have suffered lead poisoning due to ingesting Plaintiffs' Products.

83.    Contrary to Defendants' assurances that its Products are safe, healthy, and manufactured under strict quality standards, Defendants' Products contain detectable levels of lead, which is known to pose serious, life-long human health risks.

84.    Defendants failed to disclose to consumers that the Products contain or have a material risk of containing lead.

85.    Consumers, including Plaintiffs, trusted manufacturers like Defendants to sell only fruit puree products that are safe for themselves and their children, and not to sell products that contain or have a material risk of containing lead.

Case 1:24-cv-20526-KMM   Document 1-2   Entered on FLSD Docket 02/09/2024   Page 18 of 37

86.     Reasonable consumers, including Plaintiffs, expect the fruit puree products they allow their children to consume will not be contaminated or have a material risk of being contaminated with lead, substances that are known to accumulate in the body and pose significant and dangerous health consequences.

87.     Product contents, particularly contents such as lead, are material to a reasonable consumer's purchasing and consumption decision, including Plaintiffs' decisions.

88.     Consumers, including Plaintiffs, lack the scientific knowledge or ability to conduct their own scientific tests (which are time consuming and expensive) necessary to determine whether Defendants' products do in fact contain lead, or to ascertain the true nature of the ingredients and quality of the Products. Accordingly, reasonable consumers must and do rely on each Defendants to: (1) know what their Products contain; (2) regularly test the Products to confirm their compositions; and (3) properly and fully disclose those contents to consumers prior to consumption.

89.     Defendants knew or should have known that their Products contained lead and wrongfully failed to disclose on the packaging of its Products that the Products contain or have a material risk of containing lead.

90.     Defendants knew or should have known that their Products contained lead yet chose to not disclose such information to consumers and thus actively concealed the presence and risk of lead in the Products.

91.     No reasonable consumer would expect, suspect, or understand that the Products contain or have a material risk of containing lead.

92.     Defendants failed to disclose on the Products' that the Products contain or have a material risk of containing lead. It was only through the FDA and NCDHHS testing and

advisories that the general public became aware of the lead content in Defendants' Products.

93.    Based on Defendants' misrepresentations and omissions, no reasonable consumer had any reason to know, suspect, or expect that the Products contained lead.

94.    Defendants are aware that their customers trust the quality of their Products and would not expect the Products to contain or have a material risk of containing lead.

95.    As evidenced by Defendants' marketing, Defendants also know that reasonable consumers, especially parents, seek out products with ingredients free of toxins or contaminants, and that these consumers will pay more for products they believe meet these standards.

96.    Defendants further know that reasonable consumers would not knowingly consume, or feed to their families and children, products that contain lead.

97.    Defendants knew that the consumers to whom it markets the Products would find their misrepresentations and omissions to be material and that Defendants were in a special position of public trust to those consumers.

98.    In light of Defendants' representations regarding the health and quality standards of Defendants' operations and Products, Defendants knew or should have known the Products contained or had a material risk of containing lead.

99.    Defendants' misrepresentations and omissions are deceptive, misleading, unfair, and/or false because the Products contain undisclosed lead.

100.    Defendants' misrepresentations and omissions allowed Defendants to capitalize on, and reap enormous profits from, reasonable consumers like Plaintiffs that omitted material information as to the Products' true quality and value and, in fact, poisoned their child.

101.    The popularity of pureed products in "pouch" form, including the Products at issue in this litigation, are increasing rapidly across the world as parent-consumers, including

18

Plaintiffs, seek nutritious, appealing, and convenient foods for children.

102.    The purported health benefits of Defendants' Products are on full display on Defendants' packaging, as set forth herein.

103.    Defendants' misrepresentations and omissions wrongfully convey to consumers that Defendants' Products are of a superior quality and have certain characteristics that they do not actually possess.

104.    Defendants' misrepresentations and omissions are material and reasonably likely to deceive reasonable consumers and did deceive Plaintiffs.

105.    Defendants' misrepresentations and omissions have caused consumers, including Plaintiffs, to believe their Products do not contain any harmful substances, when in fact the Products contain or have a material risk of containing undisclosed levels of lead, which is material information to reasonable consumers, including Plaintiffs.

106.    Defendants' misrepresentations and omissions make the Products' packaging deceptive based on the presence or risk of lead in the Products. Reasonable consumers, including Plaintiffs, would consider the presence or risk of lead in the Products a material fact when considering which applesauce or other pureed products to consume.

107.    Defendants' misrepresentations were material and misleading due to Defendants' failure to sufficiently or adequately monitor or test for and disclose the presence or material risk of lead in the Products.

108.    Information regarding the true nature and/or presence of lead in the Products was and is in the exclusive possession of Defendants and not available to consumers. Defendants chose to not disclose such information to consumers and thus concealed the presence and risk of lead in the Products from Plaintiffs.

19

109.   Although Defendants are in the best position to know what content it placed on their website(s), social media sites, and in marketing materials during the relevant timeframe; the knowledge it had regarding presence of lead in their Products; and their failure to disclose the existence of the lead in their Products to Plaintiffs and consumers both before and after the Products were recalled; Plaintiffs allege the following facts with particularity:

a.   **WHO:** Defendants made false statements and material misrepresentations and/or omissions of fact on their Products, labeling, marketing materials and in public statements, which include express and/or implicit representations that their Products were and are free of lead and were safe for human consumption.

b.   **WHAT:** Defendants falsely and misleadingly, and through misrepresentations and omissions, led consumers to believe that their Products were and are free of lead and failed to disclose that the Products contain these materials. Thus, Defendants' conduct deceived Plaintiffs into believing that the Products were created, manufactured, and sold with such qualities. Defendants knew or should have known this information is material to reasonable consumers, including Plaintiffs, in making their decisions about the food to feed to their child, yet Defendants continued to pervasively market the Products as possessing qualities they do not possess.

c.   **WHEN:** Defendants made material misrepresentations, false statements and/or omissions both prior to and at the time Plaintiff Minor S.W. consumed Defendants' Products.

d.   **WHERE:** Defendants' marketing message was uniform and pervasive, carried through material misrepresentations, false statements and/or omissions on their Products labeling and packaging, website, and social media accounts.

e.      **HOW:** Defendants made material misrepresentations, false statements and/or omissions regarding the presence of lead in their Products by making express and/or implicit representations in the above-referenced materials that their Products were healthy, safe, and made of premium ingredients and by omitting any facts in their marketing, labeling, and/or other descriptions of their Products that would inform a consumer as to the presence of lead.

## COUNT ONE
### As to All Defendants

### Plaintiff Chelsea Windham's and Plaintiff Vincent C. Windham's
### Claims for Damages Incurred on Behalf of Themselves and Their Minor Child, S.W

110.    Plaintiffs realleges and incorporates the allegations contained in paragraphs 1-106 above, as if set forth fully herein.

111.    Plaintiff S.W. was a minor at all times referenced in this Complaint.

112.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff S.W. suffered life-long physical injuries including lead poisoning.

113.    As a result, Plaintiff Minor Child S.W. suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, loss of ability to earn money in the future, and aggravation of a previously existing condition. The losses are permanent or continuing and Plaintiff Minor Child S.W. will suffer the losses in the future.

114.    As a further result, Plaintiffs Chelsea Windham and Vincent C. Windham have incurred the expense of testing and medical care and treatment of their minor child and will continue to suffer losses including the expense of hospitalization, medical and nursing care and treatment in the future.

## COUNT TWO
## As to All Defendants

### Strict Product Liability – Failure to Warn

115.    Plaintiffs realleges and incorporates the allegations contained in paragraphs 1-111 above, as if set forth fully herein.

116.    Defendants, as manufacturers and sellers of the Products at issue in this litigation, owed a duty to the consuming public in general, and Plaintiffs in particular, to exercise reasonable care to design, test, label, advertise, market, manufacture, inspect, and distribute a product free of unreasonable risk of harm to users, when such products are used in their intended manner and for their intended purpose.

117.    Defendants knew or should have known that their Products contained lead.

118.    Defendants had a duty to warn Plaintiffs about the presence of lead in their Products.

119.    In addition, Defendants had a duty to warn Plaintiffs about the dangers of the presence of lead in their Products.

120.    Defendants knew that the risk of lead poisoning from use of its Products was not readily recognizable to an ordinary consumer and that consumers would not inspect the Products to contain harmful lead.

121.    Defendants did not warn Plaintiffs that Defendants' Products contain lead or about the dangers of the presence of lead in its Products.

122.    Plaintiffs S.W. and Chelsea Windham and Vincent C. Windham suffered damages as a direct result of Defendants' failure to warn that their Products contained lead. Plaintiff S.W. consumed Defendants' Products in a manner promoted by Defendant, and in a manner that was reasonably foreseeable by Defendant. Plaintiffs would not have allowed Plaintiff S.W. to

22

consume Defendants' Products had they known that the Products contained lead.

123.    Plaintiffs Chelsea Windham and Vincent C. Windham were justified in their reliance on Defendants' labeling and advertising of the Products for use as a safe and healthy food choice.

124.    As a result, Plaintiff Minor Child S.W. suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money in the future, and aggravation of a previously existing condition. The losses are permanent or continuing and Plaintiff Minor Child S.W. will suffer the losses in the future.

125.    As a further result, Plaintiffs Chelsea Windham and Vincent C. Windham have incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

## COUNT THREE
### As to All Defendants

### Strict Product Liability – Manufacturing Defect

126.    Plaintiffs realleges and incorporates the allegations contained in paragraphs 1-122 above, as if set forth fully herein.

127.    Defendants' Products contained a manufacturing defect when they left the possession or control of Defendants. Specifically, the Products differ from Defendants' intended result because they contained lead.

128.    Defendants' Products were unreasonably dangerous in that they contained lead, which is harmful to children and adults and not fit for human consumption.

23

129.   Plaintiff   Minor Child S.W. consumed Defendants' Products in a manner promoted by Defendants and did use the Products in a way that was reasonably foreseeable to Defendants.

130.   There was no substantial change in the Products' condition prior to it reaching Plaintiff Minor Child S.W.

131.   Plaintiff Minor Child S.W. suffered life-long injuries, including lead poisoning, as a direct result of the presence of lead in Defendants' Products.

132.   Plaintiffs Chelsea Windham and Vincent C. Windham suffered damages as a direct result of the manufacturing defect. Plaintiffs would not have fed Defendants' Products to their minor child S.W. had they known that the Products contained lead.

133.   As a result, Plaintiff Minor Child S.W. suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money in the future, and aggravation of a previously existing condition. The losses are permanent or continuing and Plaintiff Minor Child S.W. will suffer the losses in the future.

134.   As a further result, Plaintiffs Chelsea Windham and Vincent C. Windham have incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

**COUNT FOUR**
**As to Defendants WANABANA LLC and WANABANA USA LLC**

**Negligence**

135.    Plaintiffs realleges and incorporates the allegations contained in paragraphs 1-131 above, as if set forth fully herein.

136.    Defendants WANABANA LLC and WANABANA USA LLC, as manufacturers and sellers of the Products at issue in this litigation, owed a duty to the consuming public in general, and Plaintiffs in particular, to exercise reasonable care to design, test, label, advertise, market, manufacture, inspect, and distribute a product free of unreasonable risk of harm to users, when such products are used in their intended manner and for their intended purpose.

137.    At all relevant times, Plaintiffs used the Products in their intended manner and for their intended purpose.

138.    Defendants WANABANA LLC and WANABANA USA LLC directly or indirectly, negligently, and/or defectively made, created, manufactured, designed, tested, marketed, distributed, and/or sold the Products at issue in this litigation and thereby breached their duty to the general public and to Plaintiffs.

139.    Defendants knew or reasonably should have known in the exercise of due care at the time of production that their Products contained lead and posed a significant risk of serious injury.

140.    Although Defendants WANABANA LLC and WANABANA USA LLC knew or reasonably should have known in the exercise of due care at the time of production that their Products contained lead and posed a significant risk of serious injury, they failed to act in a reasonably prudent manner and breached their duty by:

25

a.      failing to use reasonable care in selecting and/or retaining suppliers of ingredients used in Defendants' Products'

b.      failing to purchase, contract, monitor, or supervise suppliers of ingredients used in Defendants' Products;

c.      failing to properly test for the presence of lead in their Products, and/or knowingly putting the Products into the stream of commerce despite knowledge of the presence of lead in the Products;

b.      failing to warn Plaintiffs and consumers that the Products contained lead; and/or

c.      touting the health, safety, and nutrition of their products, with the intention of inducing confidence and driving consumers, including Plaintiff, to consume the Products.

**141.**    Although Defendants WANABANA LLC and WANABANA USA LLC knew or reasonably should have known at the time of production that their Products contained lead, and posed a serious risk of injury, they failed to act in a reasonably prudent manner.

**142.**    As a result, Plaintiff Minor Child S.W. consumed Defendants' Products contaminated with lead and suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money in the future, and aggravation of a previously existing condition. The losses are permanent or continuing and Plaintiff Minor Child S.W. will suffer the losses in the future.

**143.**    As a further result, Plaintiffs Chelsea Windham and Vincent C. Windham have incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

**COUNT FIVE**

26

**As to All Defendants**

**Breach of Implied Warranty**

144.    Plaintiffs realleges and incorporates the allegations contained in paragraphs 1-140 above, as if fully set forth herein.

145.    Defendants, at all relevant times, have been involved in the manufacturing, distributing, warranting, and/or selling of the Products.

146.    Defendants design, manufacture, test, package, label, promote, market, advertise, distribute, and/or sell the Products at issue in this litigation throughout the United States as part of its regular course of business.

147.    Defendants knew or should have known the specific use for which the Products were purchased, including that the Products were purchased to ultimately be consumed by children.

148.    The Products are goods as defined by U.C.C. § 2-105, and Defendants know or have reason to know of the specific use for which the Products, as goods, are purchased.

149.    There was a sale of goods from Defendants to Plaintiff Minor S.W.'s paternal grandmother, purchased the Products through authorized retailers for Plaintiff Minor S.W.'s consumption while in her care.

150.    Plaintiffs are in privity with Defendants because Defendants directly sold the Products to Plaintiff S.W.'s paternal grandmother via authorized retailers for Plaintiff Minor S.W.'s consumption while in her care.

151.    The implied warranty of merchantability included with the sale of each Product means that Defendants warrant that the Products are fit for the ordinary purposes for which the Products are used and sold, and are not otherwise injurious to consumers, that the Products

would pass without objection in the trade, be of fair and average quality, and conform to Defendants' promises and affirmations of fact. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendants and consumers, which include Plaintiffs.

152.    Defendants impliedly warranted that the Products were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that Products manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for consumption by children, and (ii) a warranty that the Products would be fit for their intended use.

153.    Contrary to the applicable implied warranties, the Products, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and consumers with safe and healthy food for their children. Instead, the Products contained lead, which is harmful to children and adults, not fit for human consumption, and not conforming to the Products' packaging.

154.    Plaintiffs relied on these implied warranties when they allowed their minor child to consume Defendants' Products and when they fed the products to their minor child S.W.

155.    By placing the Products into the stream of commerce and selling them to consumers for the purpose of being consumed by children, Defendants provided Plaintiffs with implied warranties that the Products were merchantable and fit for the ordinary purposes for which they were sold.

156.    These promises became part of the basis of the bargain between Defendants and Plaintiffs and thus constituted implied warranties.

28

157.   The problems associated with the Products, including the presence of lead and the increased risk of serious adverse health effects, prevents the Products from being safely used for their intended purpose and thus constitutes a breach of the implied warranty of merchantability.

158.   Defendants were on notice of this breach as they were aware, or should have been aware, of the inclusion of lead in the Products.

159.   As the manufacturer, marketer, advertiser, distributor, and seller of the Products, Defendants are the only party with knowledge and notice of the fact that the Products contain lead.

160.   That Defendants' Products contained lead was not discoverable by Plaintiffs at the time Minor S.W. consumed the Products.

161.   Defendants' intended beneficiaries of these implied warranties were ultimately consumers such as Plaintiffs, not third-party retailers, resellers or distributors who sold the Products. Moreover, Defendants exercise substantial control over which outlets can carry and sell its Product, including the same stores where the Products Minor S.W. consumed were purchased. In addition, Defendants' warranties are in no way designed to apply to the third-party retailers, resellers or distributors who purchase the Products in bulk and then sell them on an individual basis to consumers. Individual consumers are the ones who ultimately review the Product labels prior to making any consuming decisions. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased and/or consumed the Products.

162.   As a result, Plaintiff Minor Child S.W. suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and

nursing care and treatment, loss of earnings, loss of ability to earn money in the future, and aggravation of a previously existing condition. The losses are permanent or continuing and Plaintiff Minor Child S.W. will suffer the losses in the future.

163.   As a further result, Plaintiffs Chelsea Windham and Vincent C. Windham have incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

## COUNT SIX
## As to Defendants WANABANA LLC and WANABANA USA LLC

### Negligent Misrepresentation

164.   Plaintiffs realleges and incorporates the allegations contained in paragraphs 1-160 above, as if fully set forth herein.

165.   Defendants WANABANA LLC and WANABANA USA LLC, as manufacturers and sellers of the Products at issue in this litigation, owed a duty to the consuming public in general, and Plaintiffs in particular, to exercise reasonable care to design, test, manufacture, inspect, label, advertise, market, and distribute a product free of unreasonable risk of harm to users, when such products are used in their intended manner and for their intended purpose.

166.   Defendants' Products contained lead.

167.   Exposure to lead has been linked with an increased risk of health problems, particularly for children.

168.   Given the dangerous nature of lead, the presence of lead in Defendants' Products is a material fact about the safety of the Products.

169.   Given the dangerous nature of lead, the presence of lead in Defendants' Products renders them unsafe, unhealthy, and unfit for human consumption.

170.   As set forth fully above, Defendants WANABANA LLC and WANABANA USA LLC made numerous misrepresentations about the health, safety, and nutrition of their Products on its advertising and labeling.

171.   Defendants WANABANA LLC and WANABANA USA LLC touted the health, safety, and nutrition of their Products, including the limited ingredients and lack of preservatives or BPAs in their Products, with the intention of inducing confidence and driving consumers, including Plaintiff, to purchase and/or consume the Products.

172.   Defendants WANABANA LLC and WANABANA USA LLC knew or should have known that consumers, including Plaintiffs, would likely rely on these misrepresentations in making the decision to purchase and/or consume their Products.

173.   Such representations were materially false given the presence of lead in Defendants' products.

174.   Defendants WANABANA LLC and WANABANA USA LLC knew that reliance on these representations could result in loss or injury.

175.   Defendants WANABANA LLC and WANABANA USA LLC omitted and/or concealed from its labeling, marketing, and advertising the material fact that lead was present in their Products.

176.   Plaintiffs Chelsea Windham and Vincent C. Windham were unaware of the falsity of Defendants' representations concerning the health and safety of its Products and of the omissions and concealment of material facts concerning the presence of lead in Defendants' products at the time they allowed Minor S.W. to consume Defendants' Products.

177.   The presence of lead in Defendants' Products is the type of information upon which consumers, including Plaintiffs, would be expected to rely upon in making purchasing and

consumption decisions.

178. Defendants', WANABANA LLC and WANABANA USA LLC, misrepresentations did in fact induce Plaintiffs to allow Minor S.W. to consume Defendants' Products.

179. Plaintiffs did in fact justifiably rely on Defendants' representation in allowing Minor Child S.W. to consume Defendants' Products.

180. Based on the misrepresentations of Defendants WANABANA LLC and WANABANA USA LLC, Plaintiffs were of the belief that the products were healthy, safe for consumption by their minor child, and free from dangerous lead.

181. Plaintiffs would have acted differently by not allowing their minor child to consume Defendants' Products had they known about Defendants' advertising and labeling omissions regarding the presence of lead in the Products.

182. As a result, Plaintiff Minor Child S.W. suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money in the future, and aggravation of a previously existing condition. The losses are permanent or continuing and Plaintiff Minor Child S.W. will suffer the losses in the future.

183. As a further result, Plaintiffs Chelsea Windham and Vincent C. Windham have incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for a judgment:

32

a.   In favor of Plaintiff and against all Defendants, for damages in s    such amounts as may be proven at trial;

b.   Compensation for both economic and non-economic losses, including but not limited to medical expenses, disfigurement, pain and suffering, mental anguish, and emotional distress, in such amounts as may be proven at trial;

c.   Awarding restitution and disgorgement of revenues as appropriate;

d.   Attorneys' fees and costs;

e.   Interest; and

f.   Any and all further relief, both legal and equitable, that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all claims so triable.

Dated: December 21, 2023

Respectfully Submitted,

/S/Katherine Kiziah
**Jack Scarola, Esq.**
Florida Bar No.: 169440
Attorney E-Mail: jsx@searcylaw.com
**Katherine Kiziah, Esquire**
Florida Bar No. 0017585
Attorney E-Mail: kkiziahteam@searcylaw.com
**Searcy Denney Scarola Barnhart & Shipley, P.A.**
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409
Phone: 561-686-6300
Fax: 561-383-9448
*Attorney for Plaintiff*

Filing # 188528918 E-Filed 12/21/2023 02:56:14 PM

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.     CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>Chelsea Windham, Vincent C. Windham</u>
Plaintiff

Case # _____
Judge _____

vs.
<u>WanaBana, LLC, Wanabana USA, LLC, Dollar Tree Stores, Inc.</u>
Defendant

### II.     AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

**III.     TYPE OF CASE**     (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
      ☐ Business governance
      ☐ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☒ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☐ Other
      ☐ Antitrust/Trade regulation
      ☐ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☐ Discrimination—employment or other
      ☐ Insurance claims
      ☐ Intellectual property
      ☐ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

   <u>6</u>

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Katherine A Kiziah</u>       Fla. Bar # <u>17585</u>
    Attorney or party             (Bar # if attorney)

<u>Katherine A Kiziah</u>         <u>12/21/2023</u>
(type or print name)        Date