UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-20526-MOORE/Elfenbein

**S.W.**, a minor, *et al.*,

    Plaintiffs,

v.

**WANABANA USA LLC**, *et al.*,

    Defendants.

_____/

### REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR COURT APPROVAL OF THE PARTIES' SETTLEMENT OF MINOR'S CLAIMS

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Court Approval of the Parties' Settlement of Minor's Claims (the "Motion"), ECF No. [96]. The Honorable K. Michael Moore referred the Motion to me "to take all necessary and proper action as required by law and to issue a Report and Recommendation." *See* ECF No. [97].

**I.    BACKGROUND**

Plaintiffs filed this action against Defendants for personal injuries that S.W. sustained when she ingested lead within Defendants' Wanabana apple cinnamon fruit puree product. *See* ECF No. [1-2] at 2. According to the Complaint, S.W. began consuming Defendants' puree products around July 2023, when she was approximately 15 months old, through October 2023. *See* ECF No. [1-2] at 5. During a routine childhood lead screening by her pediatrician in September 2023, S.W.'s blood tested positive for elevated lead levels. *See* ECF No. [1-2] at 6. Everyone else in S.W.'s family underwent blood testing to check for lead levels, but their blood tests were within normal limits. *See* ECF No. [1-2] at 6. On or about October 23, 2023, Plaintiffs learned that, according

to an FDA health alert, Defendants' fruit purees had "extremely high" lead levels. See ECF No. [1-2] at 6.

Plaintiffs Chelsea Windham and Vincent Windham, S.W.'s parents, thereafter filed this lawsuit on their own behalf and on behalf of S.W. against Defendants Wanabana LLC, Wanabana USA LLC (jointly the "Wanabana Defendants") and Dollar Tree Stores, Inc. ("Dollar Tree"), alleging claims for strict product liability (failure to warn and manufacturing defect) and breach of implied warranty against all Defendants as well as negligence and negligent misrepresentation against the Wanabana Defendants. See generally ECF No. [1-2]. Plaintiffs' Complaint sought compensatory damages in the form of medical expenses, disfigurement, pain and suffering, mental anguish, and emotional distress. See ECF No. [1-2] at 34.

Since then, Plaintiffs have settled their claims with Dollar Tree and, because S.W. is a minor, they now seek Court approval of that settlement. See ECF No. [96]. To that end, Plaintiffs asked the Court to appoint a guardian ad litem "to determine if this settlement is in the best interests of the minor." See ECF No. [93]. The Court thereafter granted that request, appointing Patrick C. Massa, Esq. "to review the settlement in this matter and inform the Court of his opinion as to whether the settlement is in the best interests of the minor[] involved." See ECF No. [95]. Since then, the Parties have filed under seal a copy of their confidential Settlement Agreement and Release and the Report of the Guardian Ad Litem. See ECF Nos. [101] and [102]. Mr. Massa, as the guardian ad litem, interviewed Plaintiff's counsel as well as Chelsea Windham, S.W.'s mother, and Vincent Windham, S.W.'s father, and he reviewed various documents in the case, such as the Complaint, the Settlement Agreement and Release, and the report of Plaintiffs' expert witness, Dr. Thomas Burns. See ECF No. [102]. Ultimately, Mr. Massa concluded that the proposed settlement should be approved because it is in the best interest of S.W. He noted that, according to the closing

statement, costs were significant in the case, but these were needed to properly prepare the case on matters of liability and damages, and Plaintiffs' counsel has reduced his costs in this case by $20,000 to resolve the case.  *See* ECF No. [102].

The Court thereafter set the Motion for a hearing, *see* ECF No. [103], to discuss the settlement with the Parties and Mr. Massa and get a better understanding of S.W.'s injuries, her need for future care, if any, her economic damages, the breakdown of how much S.W. would ultimately receive after the payment of attorney's fees and costs, and the amount of costs incurred, which will ultimately impact S.W.'s recovery (the "Hearing"), *see* ECF No. [104].  The Court also ordered Plaintiffs to file their closing statement itemizing the costs incurred in this case, which has since been filed under seal.  *See* ECF No. [110].

II.     **LEGAL STANDARDS**

Under Florida law, which applies here, "when parties reach a settlement after the start of litigation in a case involving a minor, the court with jurisdiction over the action must approve the settlement."  *See Perez v. 1st & 10 Sports Bar & Grill*, No. 13-CV-80912, 2016 WL 8539789, at *1 (S.D. Fla. Apr. 18, 2016) (citing Fla. Stat. § 744.387(3)(a)).  When the settlement exceeds $50,000, "the court shall appoint a guardian ad litem to represent the minor's interest before approving a settlement of the minor's claims."  *Id.* (quoting Fla. Stat. § 744.3025(1)(b)).  A guardian ad litem, in turn, must "protect the minor's interests as described in the Florida Probate Rules."  *Id.* (quoting Fla. Stat. § 744.3025(1)(d)).

Following the appointment of a guardian ad litem, the Court must next determine "whether the settlement agreement is in the best interests of" the child.  *Cress on Behalf of R.L.C. v. Brighthouse Life Ins. Co.*, No. 20-CV-1823-RBD-GJK, 2021 WL 2930830, at *1 (M.D. Fla. July 7, 2021), *report and recommendation adopted sub nom. Cress v. Brighthouse Life Ins. Co.*, No.

20-CV-1823-RBD-GJK, 2021 WL 2917564 (M.D. Fla. July 12, 2021)). When making that determination, "[t]he cardinal rule is that the District Court must find that the settlement is fair, adequate, and reasonable and is not the product of collusion of the parties." *In re Smith*, 926 F.2d 1027, 1029 (11th Cir. 1991). "The purpose of court approval 'is to protect the interests of the minor and the guardian and to ensure that any release given on behalf of the minor is legally effective.'" *Cress*, 2021 WL 2930830, at *1 (quoting *McLaughlin v. Lara*, 133 So. 3d 1004, 1006 (Fla. 2d DCA 2013)). "[O]nly the failure of the agreement to protect the interest of the minor constitutes a legitimate basis for refusal to approve the settlement under this statute." *Jackson v. Magical Cruise Co., Ltd.*, No. 14-CV-1997-ORL-18-KRS, 2016 WL 2647689, at *2 (M.D. Fla. Apr. 22, 2016), *report and recommendation adopted sub nom. Jackson v. Magical Cruise Co.*, No.14-CV-1997-ORL-18-KRS, 2016 WL 2733422 (M.D. Fla. May 9, 2016) (quoting *Reed By & Through Reed v. United States*, 891 F.2d 878, 881 n.3 (11th Cir. 1990)). Indeed, "[s]ettlement is generally favored because it conserves scarce judicial resources." *In re Smith*, 926 F.2d at 1029 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

### III. DISCUSSION

In their Motion, Plaintiffs explain that after investigating the case, they recognized that recovery of a judgment from Dollar Tree would pose "significant risks" and that the value of S.W.'s claims is subject to significant dispute. *See* ECF No. [97] at 2. Plaintiffs also explain that the proposed settlement reflects these uncertainties as well as potential recovery from other "potentially liable entities," such as a recovery "from the Ecuadorian cinnamon manufacturer[, which] is pending separate court approval." *See* ECF No. [97] at 2.

At the Hearing, the Court discussed the strengths and weaknesses of the case with the Parties. In particular, the Parties explained that S.W.'s damages remain difficult to gauge and were

hotly contested as the future impacts, if any, from the lead exposure remain unknown. What is known, however, based on the information provided by Plaintiffs' counsel, S.W.'s parents, and Mr. Massa at the hearing, is that S.W.'s lead exposure was limited, her blood levels have returned to normal, she is doing well cognitively, and Plaintiffs do not anticipate any future medical care other than continued monitoring. Mr. Massa has also informed the Court that S.W.'s expert has examined her and determined that she has made a good recovery, is strong, and has a supportive family that will assist her with any lingering residual issues from the lead exposure. Plaintiffs' counsel also explained that, given the potential number of claims from the lead exposure and Dollar Tree's limited assets available for such claims, Plaintiffs believe the agreed-upon settlement at this time is in S.W.'s best interest to avoid any future concerns regarding collectability.

The Court also addressed the breakdown of the settlement payment between attorney's fees, costs, and the payout to an annuity created for S.W.'s benefit. The Court notes that, through the annuity structure, S.W. will not receive payment until she turns 18 at which time she is guaranteed to receive four equal tax-free payments in the amount set forth in the Addendum to the Settlement Agreement.[1] *See* ECF No. [101] at 10. The total payout that S.W. will receive once distributions begin at age 18 is twice the amount that Dollar Tree will fund into the annuity.[2] The Court has also reviewed the costs incurred in this case and notes that the majority of the costs relate to the taking of depositions during discovery and the retainer of expert witnesses. *See* ECF No. [110]. In an effort to maximize S.W.'s recovery in this settlement, Plaintiffs' counsel has reduced

---

[1] The Court does not include the specific settlement amounts in the Report and Recommendation because the Settlement Agreement is confidential and filed under seal at ECF No. [101].

[2] Here, no guardianship will be required because S.W. will not receive any payments until after she turns 18.

his contingency fee from 40% to 33% and has discounted the costs that S.W. would be required to pay from the settlement proceeds by $20,145.50. *See* ECF No. [110].

Given the disputed issues on damages in the case, S.W.'s recovery, the amount that S.W. will ultimately receive through the annuity payout structure, and her anticipated recovery from other potentially liable entities, the Court agrees with Mr. Massa and finds that the settlement Plaintiffs have entered into with Dollar Tree is fair and reasonable and in S.W.'s best interests. Further, there is no evidence of collusion between the Parties. For these reasons, the settlement should be approved.

## IV. CONCLUSION

Accordingly, I **RESPECTFULLY RECOMMEND** that the Motion, **ECF No. [96]**, be **GRANTED**; and the settlement, ECF No. [101], be **APPROVED** as follows:

Dollar Tree will fund upfront and future periodic payments as set forth in the Addendum to the Settlement Agreement and General Release, which was provided to the Court under seal. *See* ECF No. [101]. The settlement terms and amount remain confidential.

Pursuant to § 626.99296, Florida Statutes, the total cost to Dollar Tree for the periodic payments portion of the settlement is as outlined in the Addendum to the Settlement Agreement and General Release. No part of the sum being paid by the Dollar Tree to provide future periodic payments as set forth herein may be paid directly to Plaintiffs or S.W. (the "Payee"), inasmuch as the Parties negotiated for a structured settlement as being in the best interest of S.W., the minor child.

The periodic payments cannot be accelerated, deferred, increased, or decreased by the Payee, nor shall the Payee have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate the same, or any part hereof, by assignment or otherwise. Transfer of the

periodic payments is prohibited by the terms of the structured settlement and may otherwise be prohibited or restricted under applicable law. Any transfer of the periodic payments by the Payee may subject the Payee to serious adverse tax consequences.

The obligation to make the periodic payments described in the Addendum to the Settlement Agreement and General Release may be assigned to Pacific Life & Annuity Services, Inc. (the "Assignee") and funded by an annuity contract issued by Pacific Life Insurance Company. Any transfer of structured settlement payments rights complies with § 626.99296, Florida Statutes, and does not contravene other applicable law.

Any payments to be made after the death of the Payee shall be made to such person or entity as shall be designated in writing by the Payee, upon reaching the age of majority, and delivered to the Assignee. If no person or entity is so designated by the Payee, or if the person designated is not living at the time of the Payee's death, such payments shall be made to the Estate of the Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Assignee. The designation must be in a form acceptable to the Assignee before such payments are made.

Pursuant to Local Magistrate Rule 4(b), the Parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the Parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the Parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

CASE NO. 24-CV-20526-MOORE/Elfenbein

**RESPECTFULLY SUBMITTED** in chambers in Miami, Florida on September 26, 2025.

_____<br>
MARTY FULGUEIRA ELFENBEIN<br>
UNITED STATES MAGISTRATE JUDGE

Cc: All Counsel of Record